WENTWORTH, Judge,
dissenting in part.
I would affirm in all respects the deputy’s resolution of the sharp conflicts and patent incredibilities in the testimony, including claimant’s subjective estimate of his diverse capacities:
The Claimant did work at least part-time, for the Employer for the 13 weeks immediately preceding his injury. In that sense, he adopted part-time work as his custom ... [I]t is hereby determined that the Claimant’s average weekly wage is $62.50 per week ($25.00 per day X 2.5 days) and his compensation rate is $41.63 per week ($62.50 X .666). During the three years after his injury, records kept by Mr. Garner suggests that the Claimant actually worked for him more than just two or three days as testified to by the Claimant. These records reflect that the Claimant worked for the Employer [part-time during] eight weeks in 1979; eight weeks in 1981; and three weeks in 1982. As with the testimony regarding the Claimant’s average weekly wage, the parties are in direct conflict ....
The Claimant is permanently and totally disabled. By education and experience he is unsuited for most light sedentary work. Dr. Rohan states that he can no longer do manual labor. The Claimant is 57 years old and barely able to read or write. Since his accident, he has worked intermittently and ... has not been able to work for Mr. Garner’s operation on a regular basis ... The Claimant’s injury has effectively removed him from the open labor market. He is unable to work on a regular basis. He has sincerely looked for lighter work but no one would *436 hire him. He is entitled to compensation for permanent total disability.
The record substantiates a steadily diminishing number of days’ employment each year since the accident,[1] for a claimant whose compensation rate is already limited by customary pre-existing half-time employment. I am unable to second-guess the deputy as to either the sincerity of claimant’s effort, or the causal contribution by his compensable injury to his removal from the open labor market.

. In the eight months preceding the 1982 hearing, employer records reflected some seven days (at $25.00 per day, or $175.00 over three weeks’ time) work for Gamer, together with odd jobs entirely consistent with the determination he is “unable to work on a regular basis.”